United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO SIERRA HERRERA,<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-05385 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Mario Sierra Herrera is an immigration detainee currently detained by U.S. Immigration and Customs Enforcement ("ICE"). Before the Court is his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *See* Dkt. No. 1. For the reasons that follow, the Court grants the petition in part and orders that he be provided a constitutionally adequate bond hearing within fourteen days.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a sixty-four-year-old native of Mexico who became a legal permanent resident ("LPR") of the United States in 1990. *See* Dkt. No. 9-1 at 2. He has a child who is a United States citizen, as well as United States-citizen grandchildren. Dkt. No. 10-3 ¶ 2.

In early May 2026, Petitioner traveled to Mexico to lay flowers on the graves of some of his deceased relatives. *Id.* ¶ 3. He was detained by the Department of Homeland Security at the Fresno Yosemite International Airport when returning to the United States on May 20, 2026. Dkt. No. 9-1 at 2. At the time of his entry, the examining immigration officer at the airport determined that Petitioner was not clearly and beyond a doubt entitled to be admitted because of a criminal

conviction for Corporal Injury under Cal. Penal Code § 273.5 from 2007. *See* Dkt. No. 9-3 at 1. Aside from this conviction nearly twenty years ago, nothing in the record suggests that Petitioner has had further interactions with law enforcement since.

Petitioner was subsequently transferred to ICE custody and served with a Notice to Appear ("NTA") seven days later placing him in removal proceedings. *Id*. The NTA charges Petitioner as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for having committed "acts which constitute the essential elements of a crime involving moral turpitude" based on his 2007 conviction. *Id*.

Petitioner has now been in ICE custody since May 2026 without any opportunity for a bond hearing. During this time no immigration judge has ruled on whether his charge of inadmissibility in the NTA is correct. *See* Dkt. No. 10-3 ¶ 5; Dkt. No. 11-1 ¶¶ 6–7. Further, he claims that his health has deteriorated significantly while in detention. Dkt. No. 10-3 ¶ 7; Dkt. No. 9-3 at 3. Specifically, he is not sure that the Government has been providing him with the correct diabetes and hypertension medication, and he had to be briefly hospitalized on August 23, 2026. Dkt. No. 10-3 ¶ 7; Dkt. No. 12-1 ¶ 5.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner claims that his continued detention violates his Fifth Amendment right to due process. *See* Dkt. No. 1 at 13–14. Respondents oppose relief, arguing that his detention is authorized, and mandatory, under 8 U.S.C. § 1225(b)(2). Dkt. No. 9 at 2–3. For the reasons that follow, the Court finds that Petitioner's detention is properly controlled by § 1225(b)(2), however, due process entitles him to a bond hearing.

### A. Mandatory Detention Under 8 U.S.C. § 1225(b)(2)

A noncitizen with lawful permanent residency may be statutorily classified as seeking admission if they "committed an offense identified in section 1182(a)(2)," which includes being "convicted of … a crime involving moral turpitude … or an attempt or conspiracy to commit such a crime." 8 U.S.C. §§ 1101(a)(13)(C)(v), 1182(a)(2)(A)(i)(I). If an examining officer at a port of entry determines that a noncitizen "seeking admission is not clearly and beyond a doubt *entitled to be admitted*," they shall be detained for removal proceedings. 8 U.S.C. § 1225(b)(2) (emphasis added). Here, Petitioner was convicted of a crime involving domestic violence. In light of this conviction, it was reasonable for the inspecting border officer at the airport to treat Petitioner as a noncitizen "seeking admission" under 8 U.S.C. § 1101(a)(13)(C)(v) and to decide that he was "not clearly and beyond a doubt entitled to be admitted," subjecting him to detention under 8 U.S.C. § 1225(b)(2).

Petitioner, however, argues that he was not properly classified as an applicant for admission under § 1225(b)(2) by the immigration officer at the airport because (1) the Government cannot show by clear and convincing evidence that he committed a crime involving moral turpitude, and (2) the border patrol officer did not make the appropriate findings when Petitioner was initially detained at the airport. *See* Dkt. No. 10 at 4–9. The Court disagrees on both fronts.

While the Government must ultimately prove the bases for Petitioner's detention by clear and convincing evidence in his removal proceedings pending before the immigration court, the Government was not required to do so at the airport, or here in these habeas proceedings. *See*

*Vazquez Romero v. Garland*, 999 F.3d 656, 664 (9th Cir. 2021) (holding that the government need not prove by clear and convincing evidence at the border that an LPR "falls within an exception under § 1101(a)(13)(C), when such a determination depends on facts that are not practically ascertainable at the border," but must do so "at subsequent removal proceedings"); *Blanche v. Lau*, 146 S. Ct. 1981, 1988–1990 (2026) (affirming *Romero* and holding the Government properly charged the noncitizen with inadmissibility upon his re-entry to the country due to pending criminal charges because "[b]order officers did not have the burden to establish by clear and convincing evidence that [the noncitizen] had committed a crime involving moral turpitude"). Whether his classification of inadmissibility was proper must be decided by the immigration court in the first instance. *See, e.g.*, *Bui v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-03993-DC-JDP (HC), 2026 WL 2390911, at *2 (E.D. Cal. Aug. 17, 2026) (holding similarly); *Hernandez v. Scott*, No. 2:26-CV-02991-TMC, 2026 WL 2833685, at *2 (W.D. Wash. Sept. 22, 2026) (denying petition where LPR was determined to be an applicant for admission at the Miami Airport based on past criminal conviction).

Thus, this court finds that Petitioner was properly detained under 8 U.S.C. § 1225(b)(2).

**B. Due Process**

"Because § 1225(b)(2) does not require a pre-deprivation bond hearing, and because such a hearing would be impractical in light of the 'quick' decisions immigration officers must make at the border," a pre-deprivation hearing was not necessary prior to detaining Petitioner. *Bui*, 2026 WL 2390911, at *2. This, however, does not end the due process inquiry. Courts throughout this district, including this one, have found that due process entitles noncitizens subject to prolonged mandatory detention under § 1225(b)(2) to a bond hearing. *See, e.g., Mohammed v. Warden of the Cal. City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2–4 (E.D. Cal. Jan. 26, 2026) (considering a detainment period of 17 months); *Abubakar Abdul-Samed v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at

some point—violate the right to due process") (citation omitted); *Rowe v. Archambeault*, No. 26-CV-01744-GPC-DEB, 2026 WL 879487, at *4 (S.D. Cal. Mar. 31, 2026) ("prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues"). The court analyzes Petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner has a protected liberty interest in his freedom from detention. Here, Petitioner has been an LPR for more than 35-years. As this Court and others have found, "LPRs [] possess particularly strong liberty interests" in remaining free from detention given their prior grant of lawful status to remain in the United States. *Amezcua v. Noem*, No. 5:26-CV-01070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026); *see also Duong v. Kaiser*, No. 25-CV-7598, 2025 WL 2578275, at *2 (N.D. Cal. Sept. 6, 2025) (concluding petitioner, who was a LPR, "has a protected liberty-interest in remaining out of custody, which would allow him to continue to serve his community and provide for his family"); *Alexeis v. Warden, California City*, No. 1:26-CV-03599 (EJD), 2026 WL 1614076 (E.D. Cal. June 4, 2026) (finding that LPR detained under 8 U.S.C. § 1226(c) had a protected liberty interest); *Maldonado v. Andrews*, No. 1:26-CV-1451-DJC-JDP, 2026 WL 1864622, at *3 (E.D. Cal. June 29, 2026) (similar).

As to the second step—what procedures or process is due—the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court finds these factors favor a bond hearing.

First, Petitioner has a substantial private interest in remaining free from detention, as

discussed above. Petitioner has established a life in the United States, as he notes his child and grandchildren are U.S. citizens. Further, Petitioner contends that his health has deteriorated during his detention due to the Government's alleged failure to provide him with the proper diabetes and hypertension medication, and he was briefly hospitalized. Thus, Petitioner's private interest has clearly been impacted by his detention.

The second factor—the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards—also weighs in Petitioner's favor. "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (quoting *Zadvydas*, 533 U.S. at 690). Here, no immigration judge has determined that Petitioner's detention is justified based on a finding of flight risk or danger to the community. Compounding this is the fact that no immigration judge appears to have opined on whether Petitioner was properly classified as an applicant for admission based on his prior conviction. Indeed, Petitioner has now sat in detention for nearly five months without any process beyond the border patrol officer's initial assessment of inadmissibility at airport. Accordingly, the value of providing a bond hearing is high.

The final factor also weighs in Petitioner's favor. Though the Government has an interest in enforcing immigration laws and public safety, its interest in detaining Petitioner without a hearing is "low" here. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019). This is particularly true given that Petitioner appears to have had no criminal issues in the last twenty years. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-CV-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). And Respondents have not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing.

Balancing these factors, the Court finds that Petitioner is entitled to a bond hearing under the Due Process Clause where he has now been detained for nearly five months, without any

ruling on whether his initial charge of inadmissibility is correct, to the detriment of his health.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED in part. Within fourteen (14) days of this Order, Respondents SHALL provide Petitioner with a bond hearing before an Immigration Judge at which the Government bears the burden of showing by clear and convincing evidence that Petitioner is either a flight risk or danger to the community to justify his continued detention. The judge must also consider appropriate alternatives to detention, including a reasonably bond.

The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

**IT IS SO ORDERED.**

Dated: October 7, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Eastern District of California